# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| TIMOTHY VOGEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:23-cv-1446 |
| ) | |
| VILLAGE OF DWIGHT and ) | |
| OFFICER WATSON MCKEE, ) | |
| ) | |
| Defendants. ) | |

## ORDER & OPINION

This matter is before the Court on Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 6). Plaintiff responded (doc. 8), making this matter ripe for review. For the following reasons, Defendants' Motion to Dismiss is denied in part and granted in part.

### BACKGROUND[1]

On December 13, 2023, Plaintiff Timothy Vogen ("Plaintiff") filed a Complaint against Watson McKee ("Officer McKee"), a police officer, and his employer, the Village of Dwight ("Village") (collectively referred to as "Defendants"). (Doc. 1). The claims stem from an incident that occurred on December 20, 2022, after Officer McKee responded to a call at Plaintiff's house, where he lived with his fiancé, Melinda McGraw, and their child. (Doc. 1 at 3). When Officer McKee arrived, Plaintiff was

---

[1] The following facts are drawn from the allegations of the Complaint and are taken as true for the purposes of this Order. *See U.S. ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018).

recording him from behind a fence on his property. (Doc. 1 at 1, 5, 8). He was shouting at Officer McKee to "do [his] job[,]" with respect to the dispute Plaintiff was having with his neighbor, Thomas Worby, at the property line. (Doc. 1 at 8). Plaintiff and his family had experienced harassment from Worby, and at the time of the incident, had a no-contact order against him. (Doc. 1 at 3–4). The police were called after Worby violated the order by speaking to the Vogen family and pointing the edge of a rake at Plaintiff's face. (Doc. 1 at 5).

Officer McKee ordered Plaintiff to stop talking, told him to put his phone away, and indicated that he was already recording on his body camera. (Doc. 1 at 8). Officer McKee said, "[I]f you keep walking up to people and holding your phone up in their face, somebody's gonna do something bad to you," and later stated that if a stranger were to start recording him like Plaintiff had, he would "put 'em on the ground." (Doc. 1 at 10, 23). After his initial interaction with Plaintiff, Officer McKee turned his attention to Worby, instructed him not to speak to McGraw, and asked Worby about his version of the events. (Doc. 1 at 9–10).

McGraw explained to Officer McKee that Worby was hitting their fence with his rake despite their no-contact order against him. (Doc. 1 at 10). She said that this was her property, which prompted an acquaintance of Worby's, who was also near the property line, to drive a steel rod into the ground on Plaintiff's side. (Doc. 1 at 10). Plaintiff removed the rod from the ground and tossed it away. (Doc. 1 at 10). In response, Officer McKee said "[D]on't" and ordered Plaintiff to put his hands behind his back. (Doc. 1 at 10, 11). After pleading with Officer McKee not to arrest him,

Plaintiff placed his hands behind his back to be handcuffed. (Doc. 1 at 11). While Officer McKee led Plaintiff towards his police car, he excessively tightened the handcuffs. (Doc. 1 at 11). Officer McKee attempted to place Plaintiff in the police car, but Plaintiff started to breathe heavily, stated he was claustrophobic, and asked not to be put in the car. (Doc. 1 at 12). Plaintiff was then slammed against the side of the car and then onto the concrete where Officer McKee landed on top of him. (Doc. 1 at 12–13). For the second time, Officer McKee brought him towards the car and attempted to force him in, slamming Plaintiff into the inside of the open car door while Plaintiff protected his head. (Doc. 1 at 13, 14). Officer McKee tried a third time to force him into the car, but Plaintiff was slammed onto the concrete ground again, and, after he repeatedly stated that he could not breathe, Officer McKee pressed his body weight against him and elbowed his chest. (Doc. 1 at 14). Plaintiff sustained multiple serious injuries, both physical and psychological, from this incident. (Doc. 1 at 15).

The instant lawsuit includes eight claims against the Defendants. Counts I and II, brought against Officer McKee, allege violations of Plaintiff's Fourth Amendment rights pursuant to 42 U.S.C. § 1983 for false arrest and the use of excessive force. (Doc. 1 at 16–22). Count III uses 42 U.S.C. § 1983 to allege against Officer McKee a violation of Plaintiff's First Amendment rights. (Doc. 1 at 22–25). Count IV attempts to hold the Village accountable for the unconstitutional actions of Office McKee under a theory of *Monell* liability. (Doc. 1 at 25–27). Counts V and VI are state-law claims of willful and wanton conduct and battery alleged against Officer

McKee. (Doc. 1 at 27–30). Counts VII and VIII are claims of *respondeat superior* and indemnification, seeking to hold the Village liable for Officer McKee's conduct under state law. (Doc. 1 at 30–31). Defendants move to dismiss all the claims contained in the Complaint. (Doc. 6).

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the complaint must contain "a short and plain statement" of the plaintiff's claim sufficient to plausibly demonstrate entitlement to relief. Fed. R. Civ. P. 8(a); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Rule 8(a)'s notice pleading standard applies to pendant state law claims that are pleaded in federal court." *Christensen v. Cnty. of Boone, IL*, 483 F.3d 454, 459 (7th Cir. 2007). When considering a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true and drawing "all reasonable inferences from those facts in favor of the plaintiff." *Berkowitz*, 896 F.3d at 839. Those statements which are legal conclusions rather than factual allegations are not taken as true but are disregarded at this stage. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012).

## DISCUSSION

As stated, the Complaint contains eight counts: five against Officer McKee and three against the Village. Defendants' Motion pertains to all eight counts. Plaintiff brings claims under 42 U.S.C. § 1983 and § 1988, authorizing this Court to address Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and § 1343.[2] There is supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the related state-law claims.

The Court reminds Plaintiff that a wide variety of constitutional rights are enforced by using § 1983. These rights are incorporated and applied to the states by the Fourteenth Amendment's Due Process Clause. *See McDonald v. City of Chi.*, 561 U.S. 742, 763 (2010). They include the Fourth Amendment's protections against unreasonable searches and seizures and the free-speech protections of the First Amendment. Thus, Plaintiff's constitutional claims are derived from the Fourteenth Amendment, and his Complaint should reflect that—Plaintiff must amend his pleading to modify any constitutional claims to also allege violations under the Fourteenth Amendment. The Court *sua sponte* dismisses Counts I, II, and III without

---

[2] Plaintiff does not indicate that he was charged with any criminal offense after the altercation on December 20, 2022. At this time, the Court does not believe there is an ongoing criminal proceeding that would implicate the abstention principles articulated in *Younger v. Harris*, 401 U.S. 37, 54 (1971), or bar the claims under *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).

prejudice[3] for this reason; however, Defendants' arguments as to those claims will be discussed here for the purpose of efficiency.

## I.    Count I

Count I is brought pursuant to § 1983 and alleges Officer McKee falsely arrested Plaintiff in violation of his Fourth Amendment rights. (Doc. 1 at 16). To state a false-arrest claim, Plaintiff must plead that he was arrested without probable cause. *See Johnson v. Myers*, 53 F.4th 1063, 1068 (7th Cir. 2022) (citing *Gaddis v. DeMattei*, 30 F.4th 625, 630 (7th Cir. 2022)). In moving to dismiss, Defendants argue that Plaintiff has pleaded sufficient facts to establish Officer McKee had probable cause to arrest Plaintiff for three offenses: disorderly conduct, resisting arrest, and obstructing a peace officer. (Doc. 6 at 5–6). In response, Plaintiff criticizes Defendants' "alternative characterizations" of the allegations of the Complaint as being in the light most favorable to them and being more "inflammatory and aggressive" than pleaded. (Doc. 8 at 5).

The existence of probable cause typically depends on the elements of the criminal offense as defined by state law. *See Doe v. Gray*, 75 F.4th 710, 718 (7th Cir. 2023) (cleaned up); *see also Stokes v. Bd. of Educ.*, 599 F.3d 617, 622 (7th Cir. 2010) ("A police officer's probable cause determination depends on the elements of the

---

[3] If Plaintiff does not amend, the remaining federal claim will be dismissed without prejudice, as the *Monell* claim will fail without an underlying constitutional violation. *See Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015) ("If the plaintiff fails to [plead or] prove a [plausible] violation of his constitutional rights in his claim against the individual defendants, there will be no viable *Monell* claim based on the same allegations."). The Court would likely decline to exercise supplemental jurisdiction over the pending state-law claims.

applicable criminal statute."). Under Illinois statute, disorderly conduct is committed when one knowingly "does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILCS 5/26-1(a)(1). The Complaint alleges that Plaintiff shouted at Officer McKee when he arrived, was told to stop talking, and later tossed a rod on his own property. (Doc. 1 at 8, 10). These allegations are not enough to constitute disorderly conduct. *See, e.g., Idris v. Conway*, No. 12 C 6271, 2014 WL 4244222, at *6 (N.D. Ill. Aug. 27, 2014) ("Illinois courts have consistently held that arguing with a police officer, even if done loudly, or with profane or offensive language, will not in and of itself constitute disorderly conduct."). The allegations related to Plaintiff's conduct do not demonstrate that the actions constituted harassment, were inherently unlawful, or were taken "in such an unreasonable manner as to alarm or disturb [Officer McKee] and provoke a breach of the peace." *Gaddis*, 30 F.4th at 631. Construing the Complaint in the light most favorable to Plaintiff as required at this pleading stage, with all reasonable inferences in his favor, he has not pleaded himself out of court on the issue of probable cause. Plaintiff shouted and tossed a metal rod—he does not allege that he tossed it towards another person or in a violent manner, as Defendants argue. To the extent Defendants dispute the factual allegations and assert that Plaintiff's actions were more inflammatory than he pleaded, that is not a question for the Court to decide at this stage. *See United States v. Ellis*, 499 F.3d 686, 688 (7th Cir. 2007) (explaining how probable cause may be properly analyzed by a court as a question of law if there are no factual disputes). As pleaded, the Complaint allows for the plausible inference

that Officer McKee did not have probable cause to arrest Plaintiff for disorderly conduct.

The next issue is whether Plaintiff plausibly alleges that Officer McKee did not have probable cause to arrest him for resisting arrest and obstructing the performance of official functions in violation of Illinois law. (Doc. 6 at 6). This offense is committed when one knowingly "(1) resists arrest, or (2) obstructs the performance by one known to the person to be a peace officer, firefighter, or correctional institution employee of any authorized act within his or her official capacity[.]" 720 ILCS 5/31-1(a). Despite Defendants' colorful depictions of Plaintiff's behavior, there are no allegations pleaded in the Complaint that indicate any of Plaintiff's actions obstructed the performance of Officer McKee's official functions, and Defendants do not cite statements in the Complaint in support of their argument. Additionally, Defendants cannot argue that Plaintiff resisted arrest and therefore violated 5/31-1(a) because the allegations in the Complaint do not demonstrate that he committed an underlying offense as required by Subsection (d). *See* 5/31-1(d) (noting that an individual "shall not be subject to arrest for resisting arrest . . . unless there is an underlying offense for which the person was initially subject to arrest."). Therefore, Defendants' argument that Officer McKee had probable cause is without merit.[4]

---

[4] The Court notes that Defendants may ultimately establish that Officer McKee reasonably believed that he had probable cause to arrest Plaintiff, but at this stage in the proceedings, "it is too early to determine the issue[.]" *Romando v. City of Naperville*, No. 20 C 2701, 2021 WL 1853304, at *3 (N.D. Ill. May 10, 2021); *see also Higgins v. Village of Lyons*, 661 F. Supp. 3d 816, 820, 822 (N.D. Ill. 2023) (collecting cases where the issue of probable cause was untimely on a motion to dismiss). Thus, at this time, Defendants' argument that Officer McKee had probable cause fails.

Therefore, the Complaint plausibly alleges that Officer McKee falsely arrested Plaintiff.[5] Defendants' Motion is denied as to Count I; however, the Court *sua sponte* dismisses the claim without prejudice for failure to plead under the Fourteenth Amendment.

## II.   Count II

Count II is a § 1983 claim against Officer McKee for his use of excessive force in violation of Plaintiff's Fourth Amendment rights. (Doc. 1 at 20). These types of claims "should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). To survive a motion to dismiss, Plaintiff must allege that "in light of the totality of the facts and circumstances," Officer McKee used an objectively unreasonable amount of force. *Id.* at 397. Objective reasonableness is evaluated from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight[,]" and is a fact-intensive inquiry. *Id.* at 396; *Alton v. City of Naperville*, No. 16 CV 6640, 2016 WL 6877678, at *2 (N.D. Ill. Nov. 22, 2016) (citation omitted). In moving to dismiss,

---

[5] Briefly, Defendants allude to the possibility that Officer McKee detained Plaintiff as part of an investigative stop; thus, he did not need probable cause. (Doc. 6 at 5–6). Although the Complaint alleges that Officer McKee told Plaintiff he was being detained rather than arrested (doc. 1 at 11), "[i]t does not matter for current purposes what label the officer applied at the scene; analysis under the [F]ourth [A]mendment is objective." *United States v. Jackson*, 377 F.3d 715, 717 (7th Cir. 2004) (citation omitted). What the Complaint actually describes—handcuffing and attempting to place Plaintiff in a police car—demonstrates the "hallmark[s] of a formal arrest[,]" that at this stage of the proceedings, the Court cannot squarely say was within the scope of an investigatory detention. *Matz v. Klotka*, 769 F.3d 517, 526 (7th Cir. 2014). Thus, Defendants' argument that Officer McKee conducted merely an investigatory stop is not persuasive at this time.

Defendants attempt to demonstrate that Plaintiff was injured because he refused to cooperate. (Doc. 6 at 6–8). Defendants cite to case law but make no arguments as to how those sources are applicable—they do not explain why dismissal is appropriate under these circumstances, and the Court will not do that for them. (Doc. 6 at 6).

In light of how courts "have determined that the necessary reasonableness inquiry cannot usually be conducted at the motion to dismiss stage[,]" the Court will not entertain a factual analysis of Officer McKee's actions at this time, if that is what Defendants are requesting. *Pitzer*, 708 F. Supp. 2d at 749. Motions to dismiss test the legal sufficiency of a pleading, not the merits of a claim. *See Alton*, 2016 WL 6877678, at *2. The Complaint alleges that Officer McKee seized Plaintiff and over-tightened his handcuffs, tackled and slammed Plaintiff to the ground twice, violently slammed Plaintiff into the side of the police car and the inside of the police car door, pushed his bodyweight into Plaintiff after body-slamming him the first time, and dug his elbow into Plaintiff's chest after body-slamming him again. (Doc. 1 at 20). Plaintiff alleges that he sustained injuries because of Officer McKee's conduct. (Doc. 1 at 14–16, 21). These allegations are sufficient to state a claim of excessive force at this stage of the proceedings. *See Matthews v. Prokopiuk*, No. 23 C 455, 2024 WL 774872, at *6 (N.D. Ill. Feb. 26, 2024) (allowing an excessive force claim to proceed at the dismissal stage because the plaintiff alleged that, after he attempted to flee, the officers "beat," "kick[ed]," and "punch[ed]," him, had one of their knees on his neck, and handcuffed and shackled him too tightly, among other things, causing him to sustain injuries).

Therefore, Defendants' Motion to Dismiss is denied as to Count II; however, as earlier alluded, the Court *sua sponte* dismisses the claim without prejudice for failure to plead under the Fourteenth Amendment.

## III.    Count III

Brought pursuant to § 1983, Count III alleges that Officer McKee arrested Plaintiff in retaliation for the exercise of his First Amendment rights. (Doc. 1 at 22). To state a retaliatory-arrest claim, Plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citation omitted). A plaintiff bringing a retaliatory arrest claim must also "plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019). If the plaintiff demonstrates that the retaliation was a motivating factor behind the arrest, the defendant can prevail only by showing that the arrest would have been initiated without respect to retaliation. *Id*. at 404. In the alternative, a plaintiff does not have to establish the absence of probable cause "when the plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id*. at 407.

The Complaint alleges that Plaintiff engaged in constitutionally protected speech, including telling Officer McKee to "do his job," videotaping him, taking

photos, verbally criticizing Officer McKee's handling of the situation, and making requests of Officer McKee. (Doc. 1 at 22–23). The subsequent arrest, he alleges, was in retaliation for and motivated by those actions. (Doc. 1 at 24). The law is clear that "[t]he act of making [a] recording is necessarily included within the First Amendment's guarantee of speech and press rights[.]" *ACLU v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012). And "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers" including "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest." *Houston v. Hill*, 482 U.S. 451, 461–63 (1987). Plaintiff's allegations establish the first element of a First Amendment retaliation claim—that he engaged in protected activity. He has similarly alleged the second element, that he suffered a deprivation that would likely deter First Amendment activity in the future, when he pleaded that Officer McKee arrested him and used excessive force. (Doc. 1 at 23–24).

The third element, which Defendants challenge in their Motion, is the requirement that Plaintiff show "his protected conduct was at least a motivating factor of the adverse action." *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020) (citation omitted). Defendants argue that there was "no connection between Plaintiff's alleged use of a cell phone camera, his alleged detention, and his alleged injuries." (Doc. 6 at 9). However, Officer McKee's comments relating directly to Plaintiff's recording activity adequately support a plausible inference that Plaintiff's protected activity was at least a motivating factor in the decision to arrest him. (*See* doc. 1 at 23) (noting comments by Officer McKee that he would put a stranger on the

12

ground for recording him like Plaintiff did, and that Plaintiff would get "what was coming to him"). Plaintiff has adequately pleaded this element of his First Amendment claim.

Defendants' other argument for dismissal is that Officer McKee had probable cause. As noted in the Court's analysis of Count I, Plaintiff has satisfied, at this stage, the general requirement that a plaintiff must plead "the absence of probable cause" in his retaliatory arrest claim. *Nieves*, 587 U.S. at 402. Even if this were not the case, Plaintiff alleges that Officer McKee treated him and Worby's acquaintance differently, although they were similarly situated and only Plaintiff engaged in protected activity. At this stage of review, Plaintiff has stated a claim for retaliatory arrest under the First Amendment. Thus, Defendants' Motion to Dismiss is denied as to Count III; however, the Court *sua sponte* dismisses the claim without prejudice for failure to plead under the Fourteenth Amendment.

## IV. Count IV

Count IV is a § 1983 claim that alleges the Village is responsible for the violation of Plaintiff's constitutional rights under a theory of municipal liability. (Doc. 1 at 25). A municipality may be held liable only "when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible for under § 1983." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). While "[a] municipality is a 'person' under § 1983 and may be held liable for its own violations of the federal Constitution and laws," it is not "liable for the constitutional torts of its employees and agents" under the doctrine of *respondeat superior*. *First*

13

*Midwest Bank, Guardian of the Estate of Michael D. LaPorta v. City of Chi.*, 988 F.3d 978, 977–78 (7th Cir. 2021) (citing *Monell*, 436 U.S. at 690–91). A plaintiff "must challenge conduct that is properly attributable to the municipality itself." *Id.* (citations omitted). To state a *Monell* claim, a plaintiff must allege his constitutional injury was caused by:

> (1) an express policy that would cause a constitutional deprivation if enforced; (2) a common practice that is so widespread and well-settled that it constitutes a custom or usage with the force of law even though it is not authorized by written law or express policy; or (3) an allegation that a person with final policy-making authority caused a constitutional injury.

*Rossi v. City of Chi.*, 790 F.3d 729, 737 (7th Cir. 2015) (citations omitted). The plaintiff must also plead that the policy or custom is the "moving force of the constitutional violation." *Monell*, 436 U.S. at 694–95.

In their Motion, Defendants argue that the Village may not be held liable because the Complaint fails to allege the existence of a widespread custom of training failures, or that Plaintiff suffered a constitutional injury. (Doc. 6 at 9–10, 12). In response, Plaintiff contends that Defendants have mischaracterized his allegations related to *Monell* liability. He states that Defendants wrongly focused on a failure-to-train theory, while he is actually alleging liability based on a widespread practice of "retaining officers known to be unfit for duty" and on the decision of a final policymaker, the Village Board, that voted to retain Officer McKee. (Doc. 8 at 14).

The Complaint sufficiently alleges that Plaintiff has suffered a constitutional violation—Defendant's arguments in favor of dismissing Counts I–IV have proven meritless. The next issue is whether Plaintiff has alleged a widespread-practice

14

theory of liability. The Complaint's allegations include some related to Officer McKee's background: after he pleaded guilty to driving under the influence over a decade ago, the Village Board voted to retain him as a police officer. (Doc. 1 at 5, 6). Shortly after the vote, members of the community petitioned for the reversal of this decision and gathered comments critical of Officer McKee. (*See* doc. 1 at 6) (alleging that Officer McKee had "harassed many people in this town and set a bad example as a police officer," and "even before this incident, several residents made complaints about" Officer McKee). Plaintiff alleges that the Village was aware of the complaints against Officer McKee and his DUI and "failed to adequately discipline or train [him] upon becoming aware of his criminal activity[.]" (Doc. 1 at 26). These failures, he states, were moving forces behind the subsequent constitutional violations of which he now complains. (Doc. 1 at 26).

A municipality is liable for a plaintiff's constitutional injuries if they are caused by a widespread practice "so permanent and well-settled that it constitutes a custom or practice" of the municipality. *Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007). Where a plaintiff premises his claim of municipal liability on an alleged policy of inaction, a showing that municipal policymakers were actually or constructively aware of "[a] pattern of similar constitutional violations . . . is 'ordinarily necessary' to demonstrate deliberate indifference . . . ." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citation omitted). Although the Seventh Circuit has declined to adopt "bright-line rules defining a widespread custom or practice," generally a plaintiff must allege more than one, and sometimes more than three,

instances of misconduct. *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). The other instances of misconduct must be similar enough to the complained-of constitutional violations to make it plausible that the particular custom or practice had the force of law. *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005).

In his Complaint, Plaintiff offers no other instances of unconstitutional misconduct to establish a pattern. The Complaint does not allege any previous incident during which Officer McKee or another officer violated a citizen's constitutional rights because of the Village's alleged failure to train, retrain, or discipline its officers. While the comments on the community petition may suggest that Officer McKee has a history of misconduct, there is no information suggesting that the commenters suffered constitutional violations sufficient to place the Village on notice of a widespread pattern. In sum, Plaintiff does not offer the necessary details for this Court to find he has alleged the Village was aware or constructively aware of the failures that purportedly caused Plaintiff's constitutional violations. He therefore fails to state a *Monell* claim.

Turning to Plaintiff's responsive argument, which is that *Monell* liability is also premised on the decision of the Village Board to retain Officer McKee, the Court notes that this allegation is seemingly missing from Count IV. Plaintiff only includes in his Complaint that the Village "consciously disregarded and were [sic] deliberately indifferent to the danger to the community posed by Officer McKee, yet allowed Officer McKee to remain a Dwight Police Officer." (Doc. 1 at 26). Even when reviewing

the Complaint in the light most favorable to Plaintiff, the Court cannot say that this general (and mostly conclusory) statement is sufficient to allege a final-policymaker theory of liability. Plaintiff would still need to include factual allegations that demonstrate maintaining Officer McKee in his employment posed a "substantial risk" of a constitutional violation, and the policymakers were deliberately indifferent to those risks. *Frake v. City of Chi.*, 210 F.3d 779, 782 (7th Cir. 2000). It is not clear that Plaintiff has sufficiently pleaded that the known and obvious consequences of retaining an employee who allegedly drove under the influence off-duty is that he would violate a citizen's constitutional rights while on duty. As is, the Complaint does not plausibly state a *Monell* claim. If Plaintiff can cure the identified defects, he may amend his claim against the Village. Thus, Defendants' Motion to Dismiss is granted as to Count IV, and this claim is dismissed without prejudice.

## V.   Counts V and VI

Counts V and VI are state-law claims of willful and wanton conduct and battery brought against Officer McKee for his actions when arresting Plaintiff. (Doc. 1 at 27–29). Defendants generally argue that Plaintiff fails to state a claim for willful and wanton conduct, and that both claims should be dismissed because under Section 2-202 of the Tort Immunity Act, Officer McKee is immune to liability for his actions. (Doc. 6 at 12–13).

Willful and wanton conduct is considered "an aggravated form of negligence," rather than an independent tort, and requires the plaintiff to first allege that "(1) defendant owed a duty to the plaintiff, (2) defendant breached the duty, and (3) the

17

breach was the proximate cause of the plaintiff's injury." *Cochran v. Securitas Sec. Services USA, Inc.*, 2016 IL App (4th) 150791, ¶ 32. The breach must be not merely negligent but committed with "conscious disregard for the welfare of the plaintiff." *Doe-2 v. McLean Cty. Unit Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507, 514 (7th Cir. 2010). Plaintiff, in his Complaint, has pleaded allegations that support Officer McKee owed him a duty, as a police officer, to refrain from willful and wanton actions that caused harm. (Doc. 1 at 27). To allege a battery, Plaintiff must plead "(1) an intentional act on the part of the defendant, (2) resulting in offensive contact with the plaintiff's person, and (3) lack of consent to the defendant's conduct." *Obermeier v. Nw. Mem'l Hosp.*, 2019 IL App (1st) 170553, ¶ 62. The Complaint alleges facts that demonstrate Plaintiff did not consent to the harmful, offensive, and intentional contact by Officer McKee. (Doc. 1 at 29).

The Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act") shields public employees from liability for any "act or omission in the execution or enforcement of any law" that does not constitute willful and wanton conduct. 745 ILCS 10/2-202. Similar to the common law definition, the Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 10/1-210.

Despite Defendants' arguments to the contrary, the Complaint demonstrates that Officer McKee acted with "utter indifference and conscious disregard for

[Plaintiff's] health and safety" when he used excessively tightened Plaintiff's handcuffs, tackled and slammed him into the police vehicle and ground, and used force "a reasonable person would believe to likely cause death or serious bodily injury[.]" (Doc. 1 at 28). Additionally, Officer McKee's actions accompanied his own unprovoked statements describing how he would physically harm someone who held a recording device up to his face like Plaintiff did. (Doc. 1 at 10, 23). At this stage, these allegations are enough to state a claim that Officer McKee acted willfully and wantonly, and to preclude immunity under Section 2-202 for both state-law claims. *See Tyehimba v. Cook Cnty.*, No. 22-CV-01139, 2024 WL 1142017, at *5 (N.D. Ill. Mar. 15, 2024) (allowing willful and wanton conduct claims to proceed at dismissal stage because the plaintiff alleged that the officer "(1) . . . closed his hand in the cell door chuckhold, (2) proceeded to painfully twist and turn Tyehimba's fingers, (3) snapped the bone as Tyehimba screamed 'Please stop, you're hurting me!', (4) saw and heard Tyehimba's finger break, and then (5) proceeded to call him a racial slur"); *Simmons v. Parkinson*, No. 119CV01231, 2022 WL 4225387, at *6 (C.D. Ill. Sept. 13, 2022) (denying a motion to dismiss a battery claim and stating "it is plausible to infer that [the officer], in her anger at Plaintiff . . . deliberately or with conscious disregard for Plaintiff's safety twisted the wrist she knew was injured and pulled down, forcing him to fall to the ground"). Defendants' Motion to Dismiss as to Counts V and VI is denied.

## VI.     Count VII

Count VII seeks to hold the Village liable for Officer McKee's actions under a theory of *respondeat superior*, or vicarious liability. (Doc. 1 at 30). This type of liability allows an employer to be held accountable for the torts of its employees when those torts were committed "within the scope of the employment." *McQueen v. Green*, 2022 IL 126666, ¶ 37 (citing *Adames v. Sheahan*, 233 Ill.2d 276, 298 (2009)). It extends to the "negligent, willful, malicious or even criminal acts of its employees[.]" *Adames*, 233 Ill.2d 276, 298 (citation omitted). While *respondeat superior* is not itself a cause of action, a plaintiff may plead it as a basis for holding a defendant responsible for the actions of its agents. *Winn v. City of Chi.*, No. 20 C 5246, 2022 WL 80272, at \*7 (N.D. Ill. Jan. 6, 2022).

Defendants' sole argument for dismissal of this claim is that Officer McKee is not liable, and therefore the Village may not be held liable. (Doc. 6 at 14). The Court has denied the Defendants' Motion to dismiss the underlying state-law claims, and Plaintiff sufficiently alleges that Officer McKee was acting within the scope of his employment as a police officer when the alleged misconduct occurred. Therefore, Plaintiff has demonstrated that the Village can be held vicariously liable, and Defendants' Motion to Dismiss is denied as to Count VII.

## VII.    Count VIII

Count VIII alleges a claim of indemnification against the Village. (Doc. 1 at 31). This type of claim triggers Section 9-102 of the Tort Immunity Act, which directs municipalities to pay compensatory damages from any tort judgments and

settlements for which its employees, acting within the scope of their employment, are liable. 745 ILCS 10/9-102. In moving to dismiss, Defendants once again argue that Officer McKee is not liable, so, the Village has no duty to indemnify. (Doc. 6 at 14).

Plaintiff has sufficiently stated two claims against Officer McKee for his conduct committed in the scope of his employment and is able to amend the other three claims; thus, Plaintiff has plausibly alleged that the Village is liable under a theory of indemnification at this stage. *See King v. City of Chi.*, No. 22 C 4605, 2023 WL 4473017, at *7 (N.D. Ill. July 11, 2023) (denying a motion to dismiss an indemnification claim against the municipality because the claims against the officers remained). Therefore, Defendants' Motion to Dismiss is denied as to Count VIII.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (doc. 6) is DENIED in part and GRANTED in part. Counts I, II, III, and IV are DISMISSED WITHOUT PREJUDICE. Plaintiff is granted leave to amend his Complaint to cure the defects identified herein within twenty-one (21) days of the date of this Order.

SO ORDERED.

Entered this 11th day of September 2024.

s/ Joe B. McDade
_____
JOE BILLY McDADE
United States Senior District Judge
