## IN THE U.S. DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Timothy Vogen, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | No: 23-cv-1446-JBM-JEH |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| Officer Watson McKee, the Village of | ) | |
| Dwight, Illinois, a municipal corporation, | ) | |
| | ) | Plaintiff demands a jury trial. |
| Defendants. | ) | |
| | ) | |
| | ) | |

### PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COMES the Plaintiff, Timothy Vogen, by and through his attorneys, Romanucci and Blandin, LLC, as his First Amended[1] Complaint at Law against Defendants Officer Watson McKee and the Village of Dwight, Illinois, pleading as follows:

### Introduction

1.  On December 20, 2022, Mr. Timothy Vogen's fiancé, Ms. Melinda McGraw, called the police due to a dispute she and Mr. Vogen were experiencing with their neighbor.

2.  In response to Ms. McGraw's call, Officer Watson McKee arrived at Mr. Vogen's home.

---

[1] Plaintiff was given leave and ordered to amend his complaint. ECF 10.

*Timothy Vogen v. Officer Watson McKee, et al.*
Complaint at Law

3.      Officer Watson McKee has a reputation for violence and abusing his power as a police officer throughout the Village of Dwight, which was known to the Village.

4.      While Officer McKee was on Mr. Vogen's property, Mr. Vogen videotaped him with his cellphone, took photos with his cellphone, made verbal requests, and verbally criticized Officer McKee.

5.      While on Mr. Vogen's property, Officer McKee instructed Mr. Vogen to put away his cellphone.

6.      Despite the fact that Ms. McGraw and Mr. Vogen were the individuals requesting help from the police, Officer McKee handcuffed and arrested Mr. Vogen without probable cause.

7.      As he was being handcuffed and led to the police vehicle, Mr. Vogen began to panic and begged Officer McKee not to put him in the back of the police vehicle due to his claustrophobia, but he did not actively resist arrest.

8.      Officer McKee not only continued his arrest of Mr. Vogen, but slammed him against the police vehicle, onto the paved concrete alley, against the door of the police vehicle, and again onto the road, all while Mr. Vogen was handcuffed.

9.      Officer McKee's use of force caused Mr. Vogen to sustain serious, life-threatening injuries.

## **Parties**

10.     At all times relevant hereto, Plaintiff Timothy Vogen was a citizen of the United States and resident of the Village of Dwight, county of Livingston, State of Illinois. He is currently a resident of Newark, county of Kendall, State of Illinois.

11.    The Village of Dwight is a municipal corporation incorporated under the laws of the State of Illinois, and was, at all times material to the allegations made in this complaint, the employer of Defendant Officer Watson McKee.

12.    Officer Watson McKee was at all times material to the allegations made in this complaint a sworn Dwight law enforcement officer acting under color of law and within the scope of his employment with the Village of Dwight. He is sued in his individual capacity.

## Jurisdiction

13.    This Court has jurisdiction over federal questions pursuant to 28 U.S.C. §§ 1331, 1343.

14.    Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of civil rights under the Fourth and First Amendments to the U.S. Constitution.

15.    Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367, to consider the Illinois state law claims alleged herein.

## Facts Common to All Counts

16.    At all times relevant, Timothy Vogen lived in a house at 205 Spencer Street, Dwight, Illinois with his fiancé, Melinda McGraw, and their daughter, Chloe (hereinafter, referred to as the Vogen family).

17.    Thomas F. Worby was a neighbor to the Vogen family, and the vacant lot that separated their homes was owned by Mr. Worby.

18.    Since moving to Spencer Street, the Vogen family experienced repeated harassment from Mr. Worby, including an incident in which Mr. Worby threatened to batter them with a push mower.

19.    Mr. Worby indicated to the Vogen family that he can do whatever he wanted to because of his connections with Dwight government officials, including the Village Administrator Kevin McNamara and local police officers.

20.    Due to Mr. Worby's harassment, the Vogen family sought a protective order against Mr. Worby.

21.    On September 13, 2022, the 11th Judicial Circuit for the State of Illinois entered an Emergency Stalking No Contact Order against Mr. Worby that protected Melinda McGraw and Chloe, finding that good cause existed to grant the emergency order because "the harm which that remedy is intended to prevent would be likely to occur."

22.    On September 27, 2022, the 11th Judicial Circuit for the State of Illinois entered a Plenary Stalking No Contact Order (hereinafter referred to as the "no-contact order"), which protected Timothy Vogen, Melinda McGraw, and Chloe.

23.    Both the emergency and plenary orders prohibited Mr. Worby from doing the following:

    a.    Threatening to commit or committing stalking personally or through third party.

    b.    Contact the Petitioner in any way, directly, indirectly, or through third parties, including, but not limited to, phone, written notes, mail, email, or fax.

    c.    Coming within fifty feet of the protected parties.

24.    Despite the order, Mr. Worby continued to harass the Vogen family.

25.    The Vogen family sought police intervention multiple times when Mr. Worby violated their protective order.

26.     On December 19, 2022, the Vogen family contacted Dwight Police seeking enforcement of the Stalking No Contact Order after Melinda McGraw noticed Mr. Worby was shining his car lights through her house window *at* her.

27.     At the end of the officers' dispatch on December 19, 2022, Mr. Worby told them that he would talk to "Mike" the following morning.

28.     The Chief of the Dwight Police Department is named Michael "Mike" Nolan.

29.     The fifty-foot prohibition of the no-contact order was lifted on December 6, 2022, but the remaining provisions of the no-contact order remained intact and binding on Mr. Worby, including the requirement that he not contact the Vogen family.

30.     On December 20, 2022, Mr. Worby violated the protective order by doing the following:

   a.   Pointing the edge of a rake in Timothy Vogen's face while Timothy Vogen stood inside the fence on his own property; *and*…

   b.   Speaking to the Vogen family several times, often with hostility.

31.     Thereafter, the Vogen family called the Dwight Police Department to have them enforce the no-contact order.

32.     Officer Watson McKee arrived at the Vogen family's residence at approximately 11:12 a.m. on December 20, 2022.

33.     Officer McKee has a reputation among many Dwight community members of abusing his power as a police officer and failing to uphold the purported standards of the Dwight Police Department.

34.    For example, in December 2013, Officer Watson McKee drove his vehicle while under the influence of alcohol and sustained injuries when he drove the vehicle into a pole.

35.    The accident was so severe that Officer Watson McKee was hospitalized.

36.    At the time of the accident, Officer Watson McKee had been a police officer for the Village of Dwight for approximately four years.

37.    In May 2014, Officer Watson McKee pled guilty to a Class A Misdemeanor for driving under the influence of alcohol, and he was sentenced to two years court supervision, community service, payment of fines, and alcohol treatment programs.

38.    Class A Misdemeanors are the most severe class of misdemeanors under Illinois law.

39.    Driving while under the influence of alcohol is classified as a violent crime in Illinois.

40.    In June 2014, the Village of Dwight Board voted on whether to allow Officer Watson McKee to remain a Dwight Police Officer.

41.    The vote passed with four in favor of allowing Officer McKee to remain a Dwight police officer (Jared Anderson, Marla Kinkade, Justin Eggenberger, and Tim Dougherty) and three against allowing Officer McKee to remain a Dwight police officer (Nick Kester, Jerry Curtis, and Randy Irvin).

42.    Shortly after the Village voted to reinstate Officer McKee, a community member started an online petition directed to the Village Board of Dwight, calling for a reversal of the decision retaining Officer McKee, which received 184 supporters in a community of approximately 4,109 residents.

43.    Several individuals commented on the petition - examples of said comments include, but are not limited to, the following:

a.    "[Officer McKee] harassed many people in this town and set a bad example as a police officer. He doesn't deserve his job back!"

b.    "Starting next month I will be going to school for criminal justice. I do not believe that it is right for anyone to drink and drive especially a police officer. If you hand out tickets, and arrest people for doing it, does that mean that you're okay with doing it yourself? Police officers do have to follow the laws too."

c.    "Although I'm a full believer in second chances, I don't understand what makes it okay for [Officer McKee] to be given one. He took an oath when he was given his badge. People are human and make mistakes. But even before this incident, several residents made complaints about this officer. I'm glad that he is alright and didn't get hurt anymore that he did...and I don't think his badge should be ripped away from him. However I do should have to be taken off the DPD and Livingston County departments."

d.    "[Officer McKee] is a crooked cop no doubt about it, pictures of him drinking with minors and all pathetic excuse for a police officer. How can you hand out DUI tickets and enforce the law when your going to be drinking and driving!?!?! This man has to be penalized for his actions. Somebody could have been killed for his actions and that is not right DOWN WITH WATSON MCKEE."

e.    "Back in 2000 I got a DUI in Dwight. I was wrong, I admit it. But that town has a history of its officers partying just like the rest of the town. If you have a DUI and try

to get a job as a correctional officer at the county jail, they won't hire you. I had 3.5 years as an officer at the Pontiac C.C. Why does it remain correct for an officer of the town to be able to serve and pull people over for drunk driving if they have DUI's on their record?"

f.  "My family lives here. My child spends her summers here. I will not sit idly by knowing [Officer McKee] is endangering my family instead of protecting them."

g.  "Let's get this corrupt "police officer" out of there! It's the People's tax money that goes to employing this joke of a police officer. Reverse the decision of retaining "Officer Watson McKee"! We are TIRED of over-controlling government authorities preaching, "Do as I say, not as I do"!!!"

h.  "Tired of public officials held to lower standards than the rest of us. Police officers should be looked up to and honored this makes it tough."

44.  In September 2014, Officer McKee returned to work as a Dwight Police Officer and, as of the authorship of this complaint, is presently employed in that position.

45.  As Officer McKee arrived on December 20, 2022, Mr. Vogen stood behind the fence of his property and video-recorded the interaction on his cell phone.

46.  From behind the fence on his own property, Mr. Vogen shouted at Officer McKee that he had a no contact order against Mr. Worby and asked Officer McKee to "do [his] job" and enforce the no-contact order.

47.  As Mr. Vogen spoke to Officer McKee from behind his own fence, Officer McKee instructed him to stop talking.

48.    Officer McKee became noticeably agitated at Mr. Vogen's requests.

49.    Officer McKee told Mr. Vogen there was no need to record because he himself was "videoing" the interaction, leading Mr. Vogen to believe that Officer McKee was wearing a body-camera that had been and was recording.

50.    Officer McKee stated that it was "worthless" for Mr. Vogen to videotape the interaction because Officer McKee was videotaping the interaction.

51.    Officer McKee's statement that he was "videoing" the entire interaction was inaccurate.

52.    As Mr. Vogen continued to record, Officer McKee instructed Mr. Vogen to "put [his] phone away."

53.    Officer McKee told Mr. Worby not to speak to Melinda, who was standing nearby, indicating that Officer McKee understood this limitation of the no-contact order.

54.    Officer McKee stated he would not speak with Mr. Vogen while he was there, even though it was the Vogen family who had requested police assistance.

55.    Officer McKee instructed the Vogen family to send videos to the Dwight Police Department who would then "send it down" for review, but Officer McKee said that he would not be arresting Mr. Worby because there was no "clear violation" and "if it's kinda grey then, no," he would not be arresting Mr. Worby.

56.    Officer McKee stated his job was "not to sit here and determine whether he has violated the order."

57.    The no-contact order provided the following notice to law enforcement agencies and officers: "Any law enforcement officer may make an arrest without warrant if the officer has probable

cause to believe that the person has committed or is committing a violation of a stalking no contact order. 740 ILCS 21/130 (a)."

58.     At the time Officer McKee said this, Mr. Worby was on Mr. Vogen's property, communicating with Mr. Vogen and Ms. McGraw, and had, only moments before, shoved the end of a rake in Mr. Vogen's face, which Mr. Vogen caught on video. Such actions were violations of the Vogen family's no-contact order against Mr. Worby.

59.     Officer McKee said to Mr. Vogen, "And I'll tell ya, if you keep walking up to people and holding your phone up in their face, somebody's gonna do something bad to you. I will tell you that."

60.     Officer McKee spoke with Mr. Worby for several minutes about his version of events.

61.     Mr. Worby explained that he "wasn't trying to take nothing from 'em," referring to the Vogen family, to which Officer McKee replied, "no, I know. I understand."

62.     After Officer McKee then finished his conversation with Mr. Worby and he went to speak with Ms. McGraw.

63.     Officer McKee asked Ms. McGraw, "So, what were they doing to the fence?"

64.     Mr. Vogen explained that "they were hitting it with their rake."

65.     Ms. McGraw told Mr. Vogen not to speak to Officer McKee and to let her handle it.

66.     Ms. McGraw began to explain what had happened, then said to Mr. Worby and Mr. Stacy, "that's my property."

67.     Mr. Worby's associate, Andy Stacy, drove a steel rod into the ground on Mr. Vogen's property.

68.     Mr. Vogen took the rod out of the ground and underhandedly tossed it away.

69.     Officer McKee said, "don't."

70.     Mr. Vogen said, "that's my property."

71.     Officer McKee instructed Mr. Vogen to put his hands behind his back while grabbing him, despite no crime having been committed by Mr. Vogen.

72.     Mr. Vogen verbally pleaded with Officer McKee not to arrest him, offering to go inside the house instead.

73.     Officer McKee then grabbed Mr. Vogen, informed Mr. Vogen that he was being detained rather than arrested and told Mr. Vogen not to resist.

74.     Officer Watson McKee said, "don't, don't, because next we're going to the ground."

75.     Mr. Vogen said "okay" and placed his hands behind his back, at which time Officer McKee placed handcuffs on Mr. Vogen and began to walk Mr. Vogen away from the property and towards Officer McKee's police vehicle.

76.     Officer McKee excessively tightened the handcuffs around Mr. Vogen's wrists.

77.     Mr. Vogen began to breathe very heavily.

78.     Officer McKee ordered Mr. Vogen to "relax."

79.     Mr. Vogen continued to breathe very heavily and stated something; Officer McKee then physically jerked Mr. Vogen and ordered him to "stop."

80.     As they approached Officer McKee's police vehicle, Mr. Vogen told Officer McKee multiple times, "I am highly claustrophobic, this makes me claustrophobic, this makes me claustrophobic."

81.    Mr. Vogen asked Officer McKee to chain him to his trailer instead, but Officer McKee, again, physically jerked Mr. Vogen and said "no," denying Mr. Vogen's request.

82.    Officer McKee told Mr. Vogen, "you're gonna go where I tell you to go."

83.    Mr. Vogen and Officer McKee continued approaching the police vehicle, while Mr. Vogen continued pleading, "Please don't put me in the car. I'm highly claustrophobic. Please don't." Mr. Vogen continued to breathe heavily.

84.    Mr. Vogen has experienced similar distress relating to being placed in confined spaces, such as when he has ridden in an elevator in the past.

85.    The back of Officer McKee's police vehicle was a confined space in which there was only room for one person.

86.    Upon arriving at Officer McKee's police vehicle, Mr. Vogen said, "Officer McKee, please don't put me in that car."

87.    Officer McKee then opened the vehicle's door, responding to Mr. Vogen, "Have a seat."

88.    Mr. Vogen continued to plead with Officer McKee not to put him in the vehicle.

89.    Mr. Vogen never assaulted, battered, or otherwise attacked Officer McKee.

90.    Mr. Vogen never actively resisted Officer McKee.

91.    Mr. Vogen never posed a threat to Officer McKee.

92.    Mr. Vogen never attempted to flee.

93.    Officer McKee then laced his arms through each of the spaces between Mr. Vogen's arms and torso and slammed Mr. Vogen against the side of the vehicle.

94.    Mr. Vogen continued to plead with Officer McKee not to put him in the vehicle.

95.    Officer McKee slammed him into the concrete ground, landing on top of Mr. Vogen with his full weight.



*Figure One: The confined space that Officer McKee forced Mr. Vogen into.*

96.    Mr. Vogen, who remained handcuffed, continued to plead with Officer McKee, stating, "Please don't, I'm highly claustrophobic."

97.    In tears, the handcuffed Mr. Vogen stated, "I won't resist you. I won't resist you."

98.    Officer McKee then brought Mr. Vogen towards the vehicle again.

*Timothy Vogen v. Officer Watson McKee, et al.*
Complaint at Law
                                        13

99.    Having just been slammed to the ground, Mr. Vogen tensed his body and continued to plead with Officer McKee not to put him into the vehicle, as Officer McKee continued to force Mr. Vogen into a confined space.

100.   Officer McKee slammed Mr. Vogen into the inside of the open car door, during which time Mr. Vogen outstretched his right leg to defend himself from hitting or impacting his head against the car door.

101.   Mr. Vogen continued to tense his body and plead with Officer McKee not to put him in the confined space.

102.   Officer McKee continued forcing Mr. Vogen into the confined space of the police vehicle.

103.   Mr. Vogen then informed Officer McKee that he was hurting Mr. Vogen's hands.

104.   Officer McKee then forcefully pulled Mr. Vogen away from the police vehicle.

105.   Officer McKee performed a forceful takedown, kicking Mr. Vogen's legs out from under him, and slammed Mr. Vogen to the ground a *second* time, who then fell face first into the concrete, while still handcuffed.

106.   Mr. Vogen rolled over and stated several times, "I can't breathe."

107.   In response, Officer McKee continued to press his body weight against Mr. Vogen for several seconds.

108.   Office McKee pressed his elbow into Mr. Vogen's chest.

109.   As a direct result of Officer McKee's use of excessive force, Mr. Vogen sustained the following physical injuries:

        a.    A completely collapsed right lung;

b.  A partially collapsed left lung;

c.  Head trauma;

d.  Pneumomediastinum;

e.  Pneumopericardium;

f.  Basilar consolidative opacity;

g.  Extensive soft tissue gas within the soft tissues of his neck and chest;

h.  Cervical subcutaneous emphysema;

i.  Voice changes;

j.  Cuts and bruises;

k.  Significant pain in his right shoulder;

l.  Crepitus around the chest and neck;

m.  Mild hypoxemia; *and…*

n.  Multiple pulmonary contusions.

110.  Mr. Vogen's medical care provider described Mr. Vogen as "critically ill with a high probability of sudden, clinically significant, or life-threatening deterioration in the patient's condition."

111.  Following Officer McKee's use of force against Mr. Vogen, the latter was diagnosed with pulmonary fibrosis, a serious, lifelong lung disease that causes lung scarring and makes it harder to breathe. There is no cure to pulmonary fibrosis and a diagnosis is often terminal.

112.  Mr. Vogen has been diagnosed with Post-Traumatic Stress Disorder.

*Timothy Vogen v. Officer Watson McKee, et al.*
Complaint at Law

113.    Mr. Vogen has always been very supportive of law enforcement and, up until Officer McKee's use of excessive force, had positive feelings towards the police, but, now, Mr. Vogen has panic attacks during even the most mundane interactions with law enforcement officials.

114.    Mr. Vogen missed two months of work following Officer McKee's attack on account of his injuries.

115.    Mr. Vogen sustained injuries to his right hand, including nerve damage, for which he is still in therapy and receiving treatment.

116.    Mr. Vogen was a truck driver prior to the interaction with Officer McKee, but Mr. Vogen, now, experiences difficulty participating in the process of going through weigh stations because the potential for or likelihood of an interaction with law enforcement causes Mr. Vogen to have a panic attack.

117.    Going through weigh stations is a compulsory part of Mr. Vogen's duties as a truck driver.

118.    Whenever Mr. Vogen goes through weigh stations, he suffers flashbacks of Officer McKee's attack, struggles to breathe, feels claustrophobic, and wonders whether the members of law enforcement at weigh stations are going to hurt him like Officer McKee did.

119.    The Vogen family had to vacate their house after the attack, moving to a different city and county because they no longer felt safe in Dwight.

### **Count 1: 42 U.S.C. §1983**
### **Fourth Amendment as applied to the states through the Fourteenth Amendment**
### **False Arrest**
*Timothy Vogen v. Officer Watson McKee*

120.    Paragraphs 1 through 119 are repeated and incorporated in this section as though fully set forth herein.

*Timothy Vogen v. Officer Watson McKee, et al.*
Complaint at Law

16

121.     Mr. Vogen is entitled to relief against Defendant Officer Watson McKee for violation of the Fourth Amendment prohibition against unreasonable searches and seizures as it is incorporated against and applied to the states by the Fourteenth Amendment's Due Process Clause.

122.     The Fourteenth Amendment to the United States Constitution incorporates and applies to the Fourth Amendment's protections against unreasonable searches and seizures to the states.

123.     Defendant McKee was not entitled to conduct an unreasonable search or seizure on Mr. Vogen.

124.     Mr. Vogen is thus entitled to relief for violation of the Fourteenth Amendment's Due Process Clause.

125.     At all times relevant, Officer McKee was acting under color of law.

126.     Mr. Vogen was not free to leave at the time that Officer McKee told Mr. Vogen to place his hands behind his back.

127.     Mr. Vogen was not free to leave when Officer McKee told him he was not permitted to go into his own house.

128.     Mr. Vogen was not free to leave at the time that Officer McKee placed handcuffs on Mr. Vogen's wrist.

129.     Mr. Vogen was not free to leave when Officer McKee instructed Mr. Vogen to go into the police vehicle.

130.     Mr. Vogen was not free to leave when Officer McKee slammed Mr. Vogen to the ground the first time.

131.    Mr. Vogen was not free to leave when Officer McKee slammed Mr. Vogen against the car door.

132.    Mr. Vogen was not free to leave when Officer McKee slammed Mr. Vogen to the ground a second time.

133.    Mr. Vogen was not free to leave when Officer McKee pushed his body weight into Mr. Vogen.

134.    Mr. Vogen was not free to leave when Officer McKee dug his elbow into Mr. Vogen.

135.    Officer McKee seized Mr. Vogen from the moment he told Mr. Vogen to place his hands behind his back.

136.    Officer McKee continued his seizure of Mr. Vogen such that the seizure was ongoing when Officer McKee (1) placed handcuffs on Mr. Vogen; (2) instructed Mr. Vogen to go into the police vehicle; (3) forced Mr. Vogen into the police vehicle; (4) slammed Mr. Vogen on the ground the first time; (5) slammed Mr. Vogen against the police vehicle's door; (6) slammed Mr. Vogen on the ground again; (7) pushed his own body weight against Mr. Vogen; and (8) dug his elbow into Mr. Vogen.

137.    Officer McKee did not have reasonable suspicion that Mr. Vogen had committed a crime at any time.

138.    Officer McKee did not have probable cause to believe Mr. Vogen had committed a crime at any time.

139.    A reasonable officer could not have believed that either arguable reasonable suspicion or arguable probable cause existed to detain or arrest Mr. Vogen.

140.    The degree of Officer McKee's intrusion was not reasonably related to the facts known by Officer McKee.

141.    No reasonable person, knowing all of the facts and circumstances known to Officer McKee, would believe that Mr. Vogen had committed or was committing a crime.

142.    No specific and articulable facts, taken together with rational inferences, reasonably warranted an intrusion into Mr. Vogen's bodily autonomy.

143.    Officer McKee was not conducting a limited stop and related protective search for weapons in Mr. Vogen's possession.

144.    Officer McKee did not attempt to question Mr. Vogen prior to seizing him.

145.    Mr. Vogen did not commit any evasive action.

146.    Mr. Vogen did not refuse to provide identification, nor did Officer McKee request it.

147.    Officer McKee did not use the least intrusive means reasonably available in his seizure of Mr. Vogen.

148.    Officer McKee's seizure of Mr. Vogen was so unreasonably intrusive that it constituted an arrest.

149.    Officer McKee falsely arrested Mr. Vogen in violation of the Fourth Amendment.

150.    Officer McKee's seizure of Mr. Vogen was objectively unreasonable in light of clearly established law.

151.    As a direct and proximate result of this objectively unreasonable conduct, Plaintiff Timothy Vogen has sustained mental and physical injuries and special and economic damages, including violation of his federal constitutional rights, humiliation, pain and suffering, physical injury,

emotional damage, mental suffering and anguish, lost wages and benefits, medical expenses, and all other damages associated with this constitutional violation.

152.    Plaintiff Timoth Vogen has been required to engage the services of the undersigned counsel. As such, he is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

**WHEREFORE**, Plaintiff Timothy Vogen respectfully requests that this Court enter judgment against Defendant Officer Watson McKee, awarding compensatory damages in excess of seventy-five thousand dollars ($75,000.00), punitive damages, and any further relief this Court deems fair and just.

### Count 2: 42 U.S.C. § 1983
### Fourth Amendment as applied to the states through the Fourteenth Amendment
### Excessive Force
*Timothy Vogen v. Officer Watson McKee*

153.    Paragraphs 1 through 119 are repeated and incorporated in this section as though fully set forth herein.

154.    Mr. Vogen is entitled to relief against Defendant Officer Watson McKee for violation of the Fourth Amendment's prohibition against unreasonable searches and seizures as it is incorporated against and applied to the states by the Fourteenth Amendment's Due Process Clause.

155.    The Fourteenth Amendment to the United States Constitution incorporates and applies to the Fourth Amendment's protections against unreasonable searches and seizures to the states.

156.    Defendant McKee was not entitled to conduct an unreasonable search or seizure on Mr. Vogen.

*Timothy Vogen v. Officer Watson McKee, et al.*
Complaint at Law

157.   Mr. Vogen is thus entitled to relief for violation of the Fourteenth Amendment's Due Process Clause.

158.   At all times relevant, Officer McKee was acting under color of law.

159.   Officer McKee effected a seizure and used objectively unreasonable force in the following circumstances:

   a.   Placing and over-tightening handcuffs on Mr. Vogen's wrists;

   b.   Tackling and slamming Mr. Vogen to the ground while Mr. Vogen's hands were cuffed behind his back such that Mr. Vogen could not break is own fall;

   c.   Violently slamming Mr. Vogen into the side of the police vehicle;

   d.   Violently slamming Mr. Vogen into the door of a police vehicle while Mr. Vogen's hands were cuffed behind his back;

   e.   Effecting a leg sweep and slamming Mr. Vogen to the ground a second time while Mr. Vogen's hands were cuffed behind his back;

   f.   Pushing his own bodyweight into Mr. Vogen after Mr. Vogen had been slammed into the ground; *and*…

   g.   Digging his elbow into Mr. Vogen's chest after Mr. Vogen had been slammed to the ground a second time.

160.   Mr. Vogen was not free to leave at any time during Officer McKee's uses of force described in the preceding paragraph.

161.   A reasonable person would consider Officer McKee's uses of force to be likely to cause either death or serious bodily harm.

*Timothy Vogen v. Officer Watson McKee, et al.*
Complaint at Law

162.   Officer McKee's actions were not justified by extreme necessity.

163.   Officer McKee did not adequately attempt to employ lesser means of force.

164.   Mr. Vogen was not suspected of a serious crime.

165.   Mr. Vogen did not pose an immediate threat to the safety of Officer McKee nor did Mr. Vogen pose an immediate threat to the safety of anyone else.

166.   Mr. Vogen did not actively resist arrest.

167.   Mr. Vogen did not attempt to evade arrest by flight.

168.   Mr. Vogen was handcuffed during each of Officer McKee's uses of force.

169.   Officer McKee's uses of force against Mr. Vogen were objectively unreasonable in light of clearly established law.

170.   As a direct and proximate result of this objectively unreasonable conduct, Plaintiff Timothy Vogen has sustained mental and physical injuries and special and economic damages, including violation of his federal constitutional rights, humiliation, pain and suffering, physical injury, emotional damage, mental suffering and anguish, lost wages and benefits, medical expenses, and all other damages associated with this constitutional violation.

171.   Plaintiff Timothy Vogen has been required to engage the services of the undersigned counsel. As such, he is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant Officer Watson McKee, awarding compensatory damages in excess of seventy-five thousand dollars ($75,000.00), punitive damages, and any further relief this Court deems fair and just.

**Count 3: 42 U.S.C. § 1983**
**First Amendment as applied to the states through the Fourteenth Amendment**
*Timothy Vogen v. Officer Watson McKee*

172. Paragraphs 1 through 119 are repeated and incorporated in this section as though fully set forth herein.

173. Mr. Vogen is entitled to relief against Defendant Officer Watson McKee for violation of the First Amendment's protection of free speech as it is incorporated against and applied to the states by the Fourteenth Amendment's Due Process Clause.

174. The Fourteenth Amendment to the United States Constitution incorporates and applies to the First Amendment's protections of free speech.

175. Defendant McKee was not entitled to violate Mr. Vogen's free speech protections.

176. Mr. Vogen is thus entitled to relief for violation of the Fourteenth Amendment's Due Process Clause.

177. At all times relevant, Officer McKee was acting under color of law.

178. At all times relevant, Mr. Vogen had the right to make audio and visual recordings of police activity.

179. Mr. Vogen engaged in the following constitutionally protected speech and activity:

      a.   Telling Officer McKee to do his job;

      b.   Videotaping Officer McKee during the relevant interaction;

      c.   Taking photos of Officer McKee during the relevant interaction;

      d.   Verbally criticizing Officer McKee's handling of the relevant interaction; *and…*

      e.   Making verbal requests to Officer McKee regarding Officer McKee's handling of the relevant interaction.

180.   Officer McKee inaccurately told Mr. Vogen that he (meaning, Officer McKee) was recording the interaction.

181.   Officer McKee told Ms. McGraw that, if a stranger came up to him and started recording him like Mr. Vogen had, he would do the following: "I'm gonna put 'em on the ground."

182.   Officer McKee complained to Ms. McGraw about Mr. Vogen's having spoken to him disrespectfully.

183.   Officer McKee told Mr. Vogen that, if Mr. Vogen were to go around shoving his camera in people's faces, Mr. Vogen was going to get what was coming to him, and, later, Officer McKee reiterated this sentiment to Ms. McGraw after he had used force against Mr. Vogen.

184.   Officer McKee told Mr. Worby that, if the Vogen family started recording him, Mr. Worby was to call the Dwight Police Department, even though such behavior is not criminal activity, and Mr. Worby, unlike Mr. Vogen, was not protected by a no-contact order.

185.   Officer McKee acted with retaliatory conduct that adversely affected Mr. Vogen's speech by doing the following:

      a.   Arresting Mr. Vogen without probable cause;

      b.   Handcuffing Mr. Vogen without justification;

      c.   Forcing Mr. Vogen into a police vehicle;

      d.   Violently slamming Mr. Vogen into the side of the police vehicle while Mr. Vogen was handcuffed;

*Timothy Vogen v. Officer Watson McKee, et al.*
Complaint at Law

    e.   Violently tackling and slamming Mr. Vogen to the ground while Mr. Vogen was handcuffed;

    f.   Violently slamming Mr. Vogen against the police vehicle door while Mr. Vogen was handcuffed;

    g.   Violently executing a leg sweep and slamming Mr. Vogen to the ground while Mr. Vogen was handcuffed;

    h.   Using force which a reasonable person would believe to likely cause death or serious bodily injury as a means of adversely affecting Mr. Vogen's speech;

    i.   Instructing Mr. Vogen to cease his protected activity, including the taking of video and audio recordings of Officer McKee's conduct; *and…*

    j.   Inaccurately telling Mr. Vogen that Officer McKee was recording as a means of encouraging Mr. Vogen to stop recording with his own device.

186.   Mr. Vogen's protected First Amendment activity motivated Officer McKee's aggressive and violent uses of force against Mr. Vogen.

187.   Officer McKee acted maliciously and sadistically with a sufficiently culpable state of mind to cause harm to Mr. Vogen.

188.   Officer McKee acted without any legitimate need to maintain or restore order or for any other good faith reason.

189.   Officer McKee was motivated by evil intent to harm and torment Mr. Vogen by callous or reckless indifference to his rights.

190.    Mr. Worby committed a crime in front of Officer McKee by violating the Vogen family's protective order, yet Officer McKee did not arrest him.

191.    Officer McKee arrested and used force against Mr. Vogen, but not Mr. Worby, who was similarly situated, because Officer McKee was retaliating against Mr. Vogen for engaging in constitutionally protected speech and activity.

192.    As a direct and proximate result of the false arrest and excessive use of force and violence on Plaintiff Timothy Vogen as a result of Plaintiff's protected speech, he has sustained mental and physical injuries and special and economic damages, including violation of his federal constitutional rights, humiliation, pain and suffering, physical injury, emotional damage, mental suffering and anguish, lost wages and benefits, medical expenses, and all other damages associated with this constitutional violation.

193.    Plaintiff Timothy Vogen has been required to engage the services of the undersigned counsel. As such, he is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

**WHEREFORE**, Plaintiff Timothy Vogen respectfully requests that this Court enter judgment against Defendant Officer Watson McKee, awarding compensatory damages in excess of seventy-five thousand dollars ($75,000.00), punitive damages, and any further relief this Court deems fair and just.

### Count 4: Illinois Law, Willful and Wanton Conduct
*Timothy Vogen v. Officer Watson McKee*

194.    Paragraphs 1 through 119 are repeated and incorporated in this section as though fully set forth herein.

*Timothy Vogen v. Officer Watson McKee, et al.*
Complaint at Law
26

195.    At all relevant times, Officer McKee owed a duty to refrain from willful and wanton acts and omissions that could cause harm to others, such as Mr. Vogen.

196.    Officer McKee showed utter indifference to or conscious disregard for Mr. Vogen's safety by falsely arresting him, performing unauthorized and unjustified uses of force upon Mr. Vogen, and retaliating against Mr. Vogen for constitutionally protected speech.

197.    At all material times, Officer McKee, by and through his acts and/or omissions and as an agent, employee, and police officer of the Village of Dwight breached his duty to Mr. Vogen by acting in an intentional manner, willful and wanton manner, and/or with utter indifference and conscious disregard for Mr. Vogen's health and safety in one or more of the following respects:

a.    Arresting Mr. Vogen without justification;

b.    Handcuffing Mr. Vogen without justification;

c.    Forcing Mr. Vogen into the confined space of a police vehicle without justification;

d.    Violently tackling and slamming Mr. Vogen to the ground while Mr. Vogen was handcuffed;

e.    Violently slamming Mr. Vogen against the police vehicle door while Mr. Vogen was handcuffed;

f.    Violently executing a leg sweep and slamming Mr. Vogen to the ground while Mr. Vogen was handcuffed;

g.    Using force which a reasonable person would believe to likely cause death or serious bodily injury as a means of adversely affecting Mr. Vogen's speech;

    h.   Using force which a reasonable person would believe to likely cause death or serious bodily injury without justification; *and…*

    i.   Using force which a reasonable person would believe to likely cause death or serious bodily injury on someone who did not pose a threat of bodily injury.

198.   In doing so, Officer McKee exhibited willful and wanton conduct, thereby causing Mr. Vogen's serious and life-threatening injuries.

199.   As a direct and proximate result of Officer McKee's willful and wanton conduct, Plaintiff Timothy Vogen has sustained mental and physical injuries and special and economic damages, including violation of his federal constitutional rights, humiliation, pain and suffering, physical injury, emotional damage, mental suffering and anguish, lost wages and benefits, medical expenses, and all other damages associated with this misconduct.

**WHEREFORE**, Plaintiff Timothy Vogen respectfully requests that this Court enter judgment against Defendant Officer Watson McKee, awarding compensatory damages in excess of seventy-five thousand dollars ($75,000.00), punitive damages, and any further relief this Court deems fair and just.

### Count 5: Illinois Law, Battery
*Timothy Vogen v. Officer Watson McKee*

200.   Paragraphs 1 through 119 are repeated and incorporated in this section as though fully set forth herein.

201.   Officer McKee, by and through his acts and/or omissions and as an agent, employee, and/or police officer of the Village of Dwight, caused bodily harm to Mr. Vogen.

202.   Officer McKee, by and through his acts and/or omissions and as an agent, employee, and/or police officer of the Village of Dwight, intentionally made offensive contact upon Mr. Vogen.

203.   Mr. Vogen did not consent to the offensive and harmful contact by Officer McKee.

204.   As a direct and proximate result of the conduct of this harmful and offensive contact, Plaintiff Timothy Vogen has sustained mental and physical injuries and special and economic damages, including violation of his federal constitutional rights, humiliation, pain and suffering, physical injury, emotional damage, mental suffering and anguish, lost wages and benefits, medical expenses, and all other damages associated with this misconduct.

**WHEREFORE**, Plaintiff Timothy Vogen respectfully requests that this Court enter judgment against Defendant Officer Watson McKee, awarding compensatory damages, punitive damages, and any further relief this Court deems fair and just.

### Count 6: Illinois Law, *Respondeat Superior*
*Timothy Vogen v. Village of Dwight*

205.   Paragraphs 1 through 119 are repeated and incorporated in this section as though fully set forth herein.

206.   When Officer McKee committed those acts so alleged in this Complaint, Officer McKee was a member and agent of the Village of Dwight Police Department, an agency of the Village of Dwight, acting at all relevant times within the scope of their employment and under color of law.

207.   Defendant Village of Dwight is liable as principal for all torts committed by its agents.

208.   As a direct and proximate result of Officer McKee's misconduct alleged in this Complaint, Plaintiff Timothy Vogen has sustained mental and physical injuries and special and economic

damages, including violation of his federal constitutional rights, humiliation, pain and suffering, physical injury, emotional damage, mental suffering and anguish, lost wages and benefits, medical expenses, and all other damages associated with this misconduct.

**WHEREFORE**, Plaintiff Timothy Vogen respectfully requests that this Court enter judgment against Defendant Village of Dwight, awarding compensatory damages in excess of seventy-five thousand dollars ($75,000.00), punitive damages, and any further relief this Court deems fair and just.

### Count 7: Illinois Law, Indemnification
*Timothy Vogen v. Village of Dwight*

209. Paragraphs 1 through 119 are repeated and incorporated in this section as though fully set forth herein.

210. Illinois law provides that public entities must pay any tort judgment for compensatory damages for which its employees are liable based upon the employees' misconduct committed within the scope of their employment activities.

211. Officer McKee was an employee of the Village of Dwight Police Department, an agency of the Village of Dwight, who acted within the scope of their employment in committing the misconduct described herein.

212. Village of Dwight is responsible to pay any judgment entered against Officer McKee.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant Village of Dwight, awarding compensatory damages in excess of seventy-five thousand dollars ($75,000.00), punitive damages, and any further relief this Court deems fair and just.

**Prayer for Relief**

213.    Wherefore, Plaintiff Timothy Vogen respectfully requests the following relief:

    a.    Compensatory damages, in an amount to be ascertained at trial, for the constitutional violations, willful and wanton conduct, and intentional battery committed upon Mr. Vogen, complained of herein;

    b.    Punitive damages from individual Defendant Officer Watson McKee, in an amount to be ascertained at trial, for his constitutional violations, willful and wanton conduct, and intentional battery committed upon Mr. Vogen, complained of herein;

    c.    Attorneys' fees, costs, and expenses, pursuant to 42 U.S.C. § 1988 and the Illinois Civil Rights Act of 2003, 740 ILCS 23/1, *et seq*; *and…*

    d.    Any further relief this Court may deem just and proper.

214.    Plaintiff Timothy Vogen demands a jury trial.

Dated: September 25, 2024.

                                                    Respectfully Submitted,

                                                    /s/ Sam Harton

                                                    Sam Harton
                                                    ROMANUCCI & BLANDIN
                                                      321 N Clark St.
                                                      Chicago, Illinois 60654
                                                    312-253-8590
                                                    IL ARDC No. 6342112

*Timothy Vogen v. Officer Watson McKee, et al.*
Complaint at Law